OSTROM VS CLAPP.

Opinion delivered October 27, 1906.

(90 S. W. Rep. 478).

1. *Juror—Misconduct of—Grounds for New Trial, When,*

One of the jurors had been one of the panel selected previously to try appellant on a criminal charge, involving practically the same state of facts, and it was further shown that this juror during the noon recess stated that appellant would not win this civil suit as he had in the criminal suit and that he, the juror, had made up his mind in the trial of the Criminal Court that defendant should be made to pay the debt in this case. *Held,* such misconduct as to entitle appellant to a new trial. Juror disqualified as such by reason of having previously formed an opinion and his discussing said case publicly during its progress and before verdict, notwithstanding the admonishment of the court to the contrary, is gross misconduct on his part.

Appeal from the United States Court for the Western District of Indian Territory; before Justice Louis Sulzbocher (Nov. 3, 1904).

Action by L. W. Clapp against James A. Ostrom. Judgment for plaintiff. Defendant appeals. Reversed.

This is a replevin suit brought by Clapp against Ostrom to recover certain personal property on two mortgages given him by Ostrom to secure payment of two notes. Ostrom pleads that the notes were usurious and void.

*De Roos Bailey* and *Thomas H. Owen,* for appellant.

*N. A. Gibson,* for appellee.

GILL, J. The evidence of plaintiff, appellee, showed: That on July 21, 1902, Ostrom gave one of the mortgages to secure a $525 note, executed by him on that date to Clapp, due July 21, 1903, with interest from date until paid at the rate of 7 per cent. per annum, and the second mortgage was given on August 7, 1903, by Ostrom to Clapp to secure a second note of that date for $1,332.50 from Ostrom to Clapp, due February 7, 1903, with interest from date until paid at 7 per cent. per annum, delinquent interest to bear interest at 8 per cent. per annum. That these loans were negotiated by one Gilbert. That for the $525 note Ostrom received in cash $500. That $25 in said note was a commission to Gilbert under a written contract from Ostrom reading as follows: "July 21, 1902. I hereby employ N. T. Gilbert to procure for me from such person as he is able, a loan of five hundred and twenty-five dollars ($525.00) for one year at seven per cent. interest per annum secured by cattle and horses and agree to pay said Gilbert for his services twenty-five dollars ($25.00). J. A. Ostrom." That for the $1,332.50 note Ostrom received in cash $1,299. That $32.50 in said note was a commission to Gilbert under a written contract from Ostrom as follows: "August 7th, 1902. I hereby employ N. T. Gilbert to procure for me a loan of one thousand three hundred and thirty-two dollars and fifty cents

($1,332.50) from such person as he is able bearing seven per cent. interest per annum, due February 7th, 1903, and secured by one hundred and ninety (190) head of cattle, and agree to pay said Gilbert thirty-two dollars and fifty cents ($32.50) for his services herein. J. A. Ostrom." The testimony further showed that at the times of making these loans and contracts Clapp was president, and Gilbert was cashier of the Bank of Commerce of Wetumka, I. T.; that Clapp lived at Wichita, Kan., and the money loaned to Ostrom was Clapp's individual money; and that Gilbert in obtaining the money loaned acted as agent for Ostrom under his two contracts. Against this evidence was the evidence of Ostrom showing, in addition, that he was induced to sign the contracts for commission understanding that the contracts were made to evade the usury law, and so stated by Gilbert at the time. Other evidence was introduced tending to prove other loans negotiated by Gilbert in the same manner. Complaint is made that the court refused certain instructions of appellant. We have examined the instructions of the court and those offered by appellant and refused by the court, and cannot find that there was any error in the court's refusal to give the instructions asked, as the points applicable to the evidence in the requested instructions were covered correctly in the general instructions of the court.

The sixth, seventh, eighth, and ninth errors complained of relate to the following condition, and may be all considered together: The ninth specification of error is as follows: "The court erred in overruling appellant's motion for a new trial and rendering judgment on the verdict on account of the misconduct, bias, and prejudice of A. J. Musgrove, one of the jurors who tried this cause, and who on his voir dire swore that he had not formed or expressed an opinion as to the merits of the case, but who during the trial of said cause, after the examination of one witness only on the part of plaintiff, at the dinner table stated

that he was on the jury in the. criminal prosecution against the defendant, J. A. Ostrom, and that he ought to have been convicted, and would have been if it had not been for the instructions of the court, that in cases of that kind he did not think a juror ought to be bound by the instructions of the court, and that he was also a juror in this case, and that the defendant would not win out in this case as he did in the criminal matter, and that he had made up his mind during the trial of the criminal case that Ostrom ought to be' made to pay the debt involved in this case." The transcript does not show the examination of the juror Musgrove on his voir dire. Nor does the transcript show any evidence counter to the affidavits filed by appellant with court below on presentation of his motion for new trial. Nor does the record disclose how the jury was selected. The affidavits on file and submitted to the court below show that the juror, Musgrove, had been one of the panel selected previously to try appellant on a criminal charge, involving practically the same facts, and further shows a statement made by him during the noon recess of court, while the civil case was on trial in which he also was a juror: "That the defendant (appellant) would not win out in this case as he did in the criminal matter, and that he had made up his mind during the trial of the criminal case that Ostrom ought to be made to pay the debt involved in this case." Certainly here was gross misconduct on the part of the juror. Openly discussing the case during its progress and announcing his proposed verdict before submission, and in direct opposition to the admonishment of the court that he must not talk about the case nor express any opinion about the case until after its final submission. Not only was this juror, under his statement, incompetent as a juror by virtue of having determined it in his own mind before its submission, but his misconduct in discussing it publicly during separation of the jury, and violating the instructions of the court, was so flagrant that upon presentation of the matter

to the court on motion for new trial should at once have been set aside, and a new trial granted.

The question of usury was before the jury. Contradictor testimony upon the matter of usury was there for determination, and the question was to be determined upon the evidence in this particular case by a jury competent and unprejudiced. One of the affidavits submitted on the hearing of the motion for new trial as to juror Musgrove reads as follows: "After the jury had returned a verdict for plaintiff·in the case of Clapp vs Ostrom    *    *    *    one of the jurors in the trial .of said cause, to wit, A. J. Musgrove, came into the room; that he, James Martin, and John Carter were all in the room when said juror appeared.  Carter said to the juror: 'Did you fix him?' The juror said: 'We threw it into his neck this time. On the first vote there were ten to two, on the second vote we drew one over, on the next, we drew another, and then the rest came across.' " This affidavit being taken as true, Musgrove, who had determined the case before being sworn as a juror, through his ability and his determination to "throw it into the neck of appellant," brought 10 other men at first in opposition to him to his way of thinking, and we do not think, under such circumstances, that appellant had a fair and impartial trial, and the cause is therefore reversed and remanded.

CLAYTON and TOWNSEND, JJ., concur. RAYMOND, C. J., not participating.